# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| **United States of America,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **Criminal Action Number** |
| ) | **06-00112-15-CR-W-ODS** |
| **Chandra L. Jenkins,** ) | |
| ) | |
| **Defendant.** ) | |

## Report and Recommendation

Pending before the Court is *Defendant Jenkin's Motion And Suggestions In Support Of Motion To Suppress Evidence*, filed May 23, 2007 [Doc. 254]. On September 28, 2007, the undersigned held an evidentiary hearing on the defendant's motion.[1] Defendant Jenkins was present and was represented by her counsel, Elle Sullivant. The government was represented by Assistant United States Attorney John Cowles. The government elicited testimony from Agent Justin Oesterreich of the Secret Service and Charlie Boyce from Wells Fargo and introduced Exhibit 2 [April 25, 2006 statement of Defendant Jenkins to Wells Fargo investigators]. Defendant Jenkins testified in her own behalf.

---

[1] The uncharacteristically lengthy period of time between the filing date of the motion to suppress and the date of the evidentiary hearing is derivative of trial continuances sought by co-defendants to which Defendant Jenkins strenuously objected. In an attempt to preserve her objection to any continuance of the trial of this matter, Defendant Jenkins sought to withdraw her motion to suppress in order to avoid inadvertently further tolling the Speedy Trial Act clock. In light of the fact that the trial was ultimately continued over Defendant Jenkins' objections, the Court denied Defendant Jenkins motion to withdraw her motion to suppress and set the matter for the instant evidentiary hearing.

On the basis of all the evidence adduced at the evidentiary hearing, the undersigned submits the following:

## PROPOSED FINDINGS OF FACT[2]

1. In late March, 2006, the United States Secret Service was conducting a bank fraud investigation in the Kansas City, Missouri area. The investigation eventually indicated the complicity of Defendant Jenkins in connection with her employment as a "business banker" with the Wells Fargo Bank in Plano, Texas. (Tr. 1-6, 40-41)

2. On April 17, 2006, Agent Oesterrich contacted Gary Forsythe, an investigator for Wells Fargo Bank in Texas and inquired as to whether Defendant Jenkins worked for the Wells Fargo Bank and whether any accounts corresponded to the identification number implicated in the identity theft investigation in Kansas City. (Tr. 15) Forsythe confirmed both pieces of information and faxed collaborative documents to Agent Oesterrich (Tr. 13, 16-17)[3]

3. On April 19, 2006. Defendant Jenkins was indicted and an arrest warrant was issued. (Tr. 6, 19). That same day, Agent Oesterreich traveled to Plano, Texas and with the assistance of the local police department arrested Defendant Jenkins. (Tr. 6-7, 19). Agent Oesterreich conducted an interview with Defendant Jenkins at the Secret Service field office in Dallas, Texas. (Tr. 7, 22-27)[4] Defendant Jenkins appeared in court the following day and ultimately was released on bond pending trial. (Tr. 8)

4. While in Texas on April 19, 1006, Agent Oesterrich contacted the Wells Fargo investigator Gary Forsythe and informed him that Defendant Jenkins had been arrested. (Tr. 8, 19). Forsythe told Agent Oesterrich that Sandra Phipps would be the Wells Fargo investigator from that point forward. (Tr. 9, 19)

---

[2] To compile proposed findings of fact, credibility determinations were required to resolve discrepancies between the testimony of Defendant Jenkins and other witnesses. In making such determinations, the Court considered (1) the demeanor of the witnesses on the stand; (2) the interest the witnesses had in the outcome of the motion; (3) the opportunity of the witnesses to hear, observe, and recall what was said or done; and (4) any conflicts within a given witness' testimony.

[3] Detective Meadors of the Independence Missouri Police Department also spoke with Gary Forsythe by telephone on April 17, 2006. Although the exact parameters of the conversation are somewhat unclear from the record, Detective Meadors apparently informed Forsythe of some of the details of the investigation in Kansas City. (Tr. 13, 14-15, 20)

[4] In the instant motion to suppress, Defendant Jenkins does not contest the legality of the interview conducted by Agent Oesterrich.

5. On April 20, 2006, after returning to Kansas City, Agent Oesterrich spoke with Wells Fargo investigator, Sandra Phipps, and her supervisor, Charlie Boyce on a conference call. Agent Oesterrich briefed the Wells Fargo investigators Phipps and Boyce on the investigation and informed them of the details of his interview of Defendant Jenkins on April 19th. (Tr. 10, 22, 27, 40, 76) Phipps and Boyce indicated that they intended to interview Defendant Jenkins as well. (Tr. 10)

6. Wells Fargo Bank personnel interviewed Defendant Jenkins twice in connection with their own internal investigation arising out of the Secret Service bank fraud investigation in Kansas City. (Tr. 41) On April 25, 2006, Wells Fargo investigators Charlie Boyce, Sandra Phipps and Marty Weber interviewed Defendant Jenkins in a conference room at the Wells Fargo Bank. (Tr. 44) Defendant Jenkins was informed that the investigatory interview was entirely voluntary and that she was free to walk away at any point in time. (Tr. 45) The interview lasted approximately an hour and a half. (Tr. 47) No coercion, duress, threats, nor promises were used during the interview. (Tr. 45-46, 48-49, 50, 52-53) Defendant Jenkins answered questions about her involvement and prepared and signed a "Voluntary Interview Information" form and a "Voluntary Statement" form in that regard. (Tr. 47, Ex. 2, 66-67) The second interview of Defendant Jenkins occurred on May 4, 2006 in the same location under the same conditions. (Tr. 49-50, 66-67) Defendant Jenkins completed the "Voluntary Interview Information" form for that interview as well. (Ex. 2-last page) However, although Defendant Jenkins provided inculpatory information during the course of her conversation with Wells Fargo investigators on May 4, 2006, she declined to prepared a written statement. (Tr. 48, 50) At the conclusion of the May 4th interview, Defendant Jenkins resigned from her employment with Wells Fargo. (Tr. 52).

7. The Wells Fargo "Voluntary Interview Information" forms signed by Defendant Jenkins and the Wells Fargo investigators contains the following statement:

> *1. Wells Fargo investigations are CONFIDENTIAL internal bank matters. Investigative topics, questions, and answer [sic] are not to be shared or discussed with anyone.*

(Ex. 2 - first and last pages, 56, 61-62). Wells Fargo investigator Boyce testified that Exhibit 2 was not produced to the Secret Service or to the United States Attorney's Office in 2006, but rather was subpoenaed from Wells Fargo after Boyce informed the Assistant United States Attorney of their existence the day before the instant evidentiary hearing. (Tr. 49, 68-69)

3

8. During the conference call with Sandra Phipps and Charlie Boyce, Agent Oesterich did not suggest to the Wells Fargo investigators any topics or questions that should be posed to Defendant Jenkins during an interview. (Tr. 11, 42) Agent Oesterich was not informed of whether, when, or where the interviews occurred. Agent Oesterich did not attend the April 25th or May 4th interview of Defendant Jenkins by Wells Fargo investigators. The Wells Fargo investigators did not report back to Oesterich after the April 25th interview, nor send any documents or communication about what they learned from Defendant Jenkins on April 25th. Agent Oesterich did not give any direction to the Wells Fargo investigators as to the subject matter of the interviews or whether Defendant Jenkins should be advised of her *Miranda* rights prior to an interview. (Tr. 11, 42) [5]

9. On approximately May 14, 2006, Agent Oesterrich contacted Sandra Phipps and inquired whether a *Suspicious Activity Report* ("SAR") had been prepared as a result of any investigation of Defendant Jenkins by Wells Fargo. (Tr. 11-12) Agent Oesterrich knew that it was standard operating procedure for a bank to prepare an SAR in financial crime investigations (Tr. 31, 35-36, 42) At the request of Agent Oesterrich, Sandra Phipps faxed a portion of an SAR that dealt with the interviews of Defendant Jenkins by Wells Fargo investigators on April. 25, 2007. (Tr. 12, 31, 36, 59-64). .

## PROPOSED CONCLUSIONS OF LAW

Defendant Jenkins asks the Court to suppress all statements made by her to Wells Fargo investigators arguing that the statements were obtained in violation of the Fifth Amendment of the United States Constitution. In relevant part, the Fifth Amendment commands that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. CONST. Amend. V. With regard to the Fifth Amendment, the Supreme Court has found:

> The essence of this basic constitutional principle is the requirement that the [government] which proposes to convict and punish an individual produce the evidence against him by the independent labors of its officers, not by the simple, cruel expedient of forcing it from his own lips.

---

[5] Nonetheless, on cross examination, Agent Oesterrich testified as to the symbiotic nature of the relationship between the United States Secret Service and financial institutions in the investigation of financial crimes. (Tr. 28) Agent Oesterrich testified that the Secret Service and banks investigators routinely share information during the course of investigations. (Tr. 28)

4

*Estelle v. Smith*, 451 U.S. 454, 462, 101 S.Ct. 1866, 1872 (1981). However, as the Supreme Court has made clear on numerous occasions, the right against self-incrimination does not prohibit any and all statements made by suspects from being admissible in a criminal proceeding. For example:

> [The Fifth Amendment] does not preclude a witness from testifying voluntarily in matters which may incriminate him, . . . for those competent and freewilled to do so may give evidence against the whole world, themselves included. . . . Indeed, far from being prohibited by the Constitution, admissions of guilt by wrongdoers, if not coerced, are inherently desirable.

*U.S. v. Washington*, 431 U.S. 181, 186-87, 97 S.Ct. 1814, 1818 (1977). The touchstone of such Fifth Amendment analysis is voluntariness. *Dickerson v. U.S.*, 530 U.S. 428, 434, 120 S.Ct. 2326, 2331 (2000) ("We . . . continue to exclude confessions that were obtained involuntarily.").

With regard to statements made by a suspect during custodial interrogation by law enforcement, the Supreme Court, in the landmark case of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602 (1966), enunciated a special test for ascertaining voluntariness. The reason for such special treatment stems from the Supreme Court's recognition that custodial interrogations are inherently coercive. *Dickerson*, 530 U.S. at 435, 120 S.Ct. at 2331; *New York v. Quarles*, 467 U.S. 649, 654, 104 S.Ct. 2626, 2630 (1984). Indeed, in *Miranda,* the Supreme Court observed that custodial interrogations, by their very nature, generate "inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." *Miranda*, 384 U.S. at 467, 86 S.Ct. at 1624. Consequently,

> To combat this inherent compulsion, and thereby protect the Fifth Amendment privilege against self-incrimination, *Miranda* imposed on the police an obligation to follow certain procedures in their dealings with the accused.

*Moran v. Burbine*, 475 U.S. 412, 420, 106 S.Ct. 1135, 1140 (1986). These procedures, now almost universally familiar, include fully apprising a suspect of the prosecution's intention to use his statements to secure a conviction and informing him of his rights to remain silent and to have counsel present if he so desires. *Miranda*, 384 U.S. at 468-70, 86 S.Ct. at 1624-26.

In the present case, there is no dispute that the Wells Fargo investigators did not explicitly inform Defendant Jenkins of her *Miranda* rights.  However, while it is true that the Wells Fargo investigators did not give Defendant Jenkins *Miranda* warnings, such warnings are only required when there is a "custodial interrogation," which has been defined by the United States Supreme Court as "questioning initiated by <u>law enforcement officers</u> after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at  444, 86 S.Ct. at 1612 (*emphasis supplied*).  Simply put, the Wells Fargo investigators are private citizens, not law enforcement officers. To that end, "[c]ourts are unanimous in holding that *Miranda* warnings need not be given when a suspect gives a statement to a private individual." WILLIAM E. RINGEL, SEARCHES AND SEIZURES, ARRESTS AND CONFESSIONS § 26:9 (2007).  *See also United States v. Bolden*, 461 F.2d 998, 999 (8th Cir.1972) ( *Miranda* warnings not required before questioning because private security officer was not a "law enforcement official"); *United States v. Antonelli*, 434 F.2d 335, 337 (2nd Cir.1970) ( "[T]he Fifth Amendment privilege against self-incrimination does not require the giving of constitutional warnings by private citizens or security personnel employed thereby who take a suspect into custody."); *United States v. Willis*, 397 F.Supp. 1078, 1082 (E.D .Pa.1975)("Since the questioning by [the bank detective] was not custodial interrogation by a law enforcement officer, *Miranda* is not applicable and no warnings were required.").

Defendant Jenkins argues that the actions of the Wells Fargo investigators are attributable to the Government inasmuch as the investigators were acting as agent of law enforcement officers.  It is true that in certain circumstances "the government can exercise such control over a private actor that a 'private' action can fairly be attributed to the government for purposes of the Fourth and Fifth Amendment."  *United States v. Garlock*, 19 F.3d 441, 443 (8th Cir. 1994).  The burden of establishing such control rests with Defendant Jenkins and requires that he establish either that: (1) "the government exercised such coercive power or such significant encouragement that it is responsible" for the conduct of the Wells Fargo investigators, or (2) the powers exercised by the Wells Fargo investigators "are the exclusive prerogative of the government."  *Id*.  As to the latter test, it is well settled that private industries are entitled to investigate alleged wrongdoing within their business sphere and such investigations may well include interviewing and obtaining statements from alleged wrongdoers.

As to any argument that the government exercised coercive power, there is simply no credible evidence to support such a conclusion.  The evidence does not establish that the government directed that Defendant Jenkins be interviewed by Wells Fargo investigators nor that the government influenced or managed the questioning of Defendant Jenkins by Wells Fargo investigators.  At most, the evidence reveals that Wells Fargo may have been motivated by sel-interest to protect itself from wider criminal implications.  However, as noted by the Eight Circuit:

> [The private party] may have been motivated, to some extent, by an urge to help the government, either as a means of protecting herself through the prospect of immunity or by the "simple but often powerful convention of openness and honesty."  But that it not enough to make her a government agent.

7

*United States v. Huber*, 404 F.3d 1047, 1054 (8th Cir. 2005) (*citing*, *in part*, *Coolidge v. New Hampshire*, 403 U.S. 443, 488, 91 S.Ct. 2022, 2049 (1971)). Because Defendant Jenkins' statements were made to persons who were not law enforcement officers or their agents, there was no "custodial interrogation"[6] within the meaning of *Miranda* and the statements need not be suppressed for any constitutional impropriety.

Accordingly, it is

**RECOMMENDED** that the Court, after making an independent review of the record and applicable law, enter an order **DENYING** *Defendant Jenkins' Motion And Suggestions In Support Of Motion To Suppress Evidence*, filed May 23, 2007 [Doc. 254]

Counsel are reminded that each has 10 days from the date of receipt of a copy of this report and recommendation to file and serve specific objections to the same. A failure to file and serve timely objections shall bar attack on appeal of the factual findings in this report which are accepted or adopted by the district judge except upon the ground of plain error or manifest injustice.

                                                   */s/ John T. Maughmer*
                                                  **JOHN T. MAUGHMER**
                                                  **U. S. MAGISTRATE JUDGE**

---

[6] Moreover, even if *Miranda* was applicable to the questioning of Defendant Jenkins by the Wells Fargo investigators, the Court finds that the circumstances and conditions under which the statements were made lead to the inescapable conclusion that the statements were nonetheless "voluntary" under the Fifth Amendment.